IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID R. BARTZ,

                        Plaintiff,                      OPINION AND ORDER

    v.

                                                        11-cv-123-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                        Defendant.

---

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). David R. Bartz seeks reversal of the commissioner's decision that found him ineligible for Disability Insurance Benefits because he is not disabled. Bartz contends that the administrative law judge (1) failed to properly consider his treating physician's opinion, (2) ignored favorable findings from two state agency consulting physicians, and (3) erroneously relied on the Medical-Vocational Guidelines to find him not disabled. The court agrees that the administrative law judge failed to provide good reasons for rejecting the opinion of his treating physician, did not consider the favorable opinions of two consulting physicians and erred in applying the guidelines. Accordingly, the court will remand this case to the Commissioner for further proceedings consistent with this opinion.

---

    [1] The court has revised the caption to reflect the fact that Carolyn Colvin replaced Michael Astrue as the Acting Commissioner of Social Security after this case was filed.

FACTS[2]

A. Background

David R. Bartz was born on March 26, 1961. He has 16 years of education. Bartz has worked in the past as a school teacher, an insurance salesman, and a real estate salesman. AR 26.

In July 2007, Bartz filed an application for disability insurance benefits, alleging that he had been unable to work since January 2006 because of depression, anxiety, attention deficit hyperactivity disorder, and various other psychological symptoms. AR 146-47. After the local disability agency denied Bartz's application initially and upon reconsideration, he requested a hearing, which was held on June 4, 2009, before Administrative Law Judge Dale A. Garwal. The administrative law judge heard testimony from Bartz. AR 55-67. On August 17, 2009, the administrative law judge issued his decision, finding Bartz not disabled. AR 16-27. This decision became the final decision of the commissioner on December 23, 2010, when the Appeals Council denied Bartz's request for review. AR 1-4.

B. Medical Evidence

On January 17, 2005, Bartz began seeing Dr. William J. Weggel, a psychiatrist. At the initial appointment, Bartz complained of irritability, argumentativeness, concentration difficulties, difficulties with follow through, depression, racing thoughts, some social anxiety,

---

[2] The following facts are drawn from the administrative record (AR).

2

and trouble communicating. AR 237. Weggel diagnosed Bartz with dysthymic disorder and gave him a Global Assessment Functioning score of 55, indicating moderate symptoms.[3]

Weggel referred Bartz to therapist Mr. Wilson-Broyles to evaluate whether cognitive behavioral therapy was appropriate. AR 237. After participating in several group therapy sessions, Bartz showed some improvement. AR 221-30. During 2005, Weggel also monitored Bartz's medications, including Wellbutrin and Prozac. Weggel noted in April that Bartz was unable to get himself motivated or focused to be productive. In addition, while Bartz's affect was generally appropriate, his thought process was a "little choppy" at times. AR 231. On August 30, Weggel noted that Bartz still had concentration and follow-through difficulties, but his mood was more stable in the summer. Weggel anticipated Bartz would have worsening symptoms in fall and winter, consistent with a history of seasonal affective disorder. AR 220. On November 29, Weggel again saw Bartz, noting that he tended to ramble and his thoughts were not linear. Even so, Bartz's affect seemed "fairly broad" to Weggel. At that time, Bartz planned to begin phototherapy for seasonal affective disorder. AR 219.

On March 21, 2006, Bartz returned to see Dr. Weggel, who noted that Bartz's concentration problems, memory difficulties and lack of motivation persisted. On the positive side, he also noted that the winter months had not exacerbated the seasonal affective

---

[3]The Global Assessment Functioning scale reports a clinician's assessment of the individual's overall level of functioning. *Sims v. Barnhart*, 309 F.3d 424, 427 n. 5 (7th Cir. 2002). A GAF of 21-30 indicates inability to function in almost all areas; 31-40 indicates major impairment in several areas; 41-50 indicates serious symptoms; 51-60 indicates moderate symptoms; and 61-70 indicates mild symptoms. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (Text Revision).

disorder as severely as anticipated. While Bartz reported being anxious and struggling with "word-finding," he was able to put together and sell to realtors a professional-looking brochure of houses for sale and was feeling more positive. AR 270. In April 2006, after Bartz complained of sleep problems and headaches, Weggel stopped his Wellbutrin, continued his Prozac and added Strattera to improve his concentration. Because Bartz could not afford the Strattera, Weggel changed the prescription to Ritalin. AR 267.

In September 2006, Weggel stated that Bartz continued to exhibit moodiness and inability to concentrate despite some improvement from his medications. Bartz's affect was fairly appropriate but he had some difficulty with word finding and thought processes, causing Weggel to increase Bartz's medications. AR 265. By May of 2007, Bartz was feeling more depressed. Weggel noted that Bartz's affect was fair, but he did not have a thought disorder. Weggel indicated that Bartz's GAF score had improved to 60. AR 260.

On July 27, 2007, Bartz saw a sleep specialist for suspected sleep apnea. Dexter diagnosed Bartz with "mild obstructive sleep apnea." AR 296. Eventually, Bartz began using continuous positive airway pressure (CPAP) treatment. AR 296.

When Bartz returned to see Dr. Weggel on December 11, 2007, Weggel noted that the CPAP had helped reduce Bartz's daytime sleepiness. Although Bartz was fairly stable, he complained of inattentiveness, especially with "bookwork" activities. Weggel concluded that Bartz had depression and attention deficit problems. AR 341. Bartz again saw Dr. Weggel on March 11, 2008. Weggel noted that Bartz was stable, but still had ongoing problems with significant inattentiveness and distractability. AR 339. On July 14, 2008,

Weggel noted that Bartz was stable and no longer depressed and that his memory and concentration were "intact." AR 337-38.

On September 24, 2008, Dr. Weggel completed a form concerning Bartz's ability to do work-related activities for the period January 26, 2005 through September 2008, noting that the date of his last visit was July 14, 2008. He also noted that most of Bartz's work abilities were fair, but that he could not maintain attention for two hour segments. AR 335.

### C. Consulting Physicians

On April 7, 2006, state agency psychologist Keith Bauer completed a psychiatric review technique form for Bartz, finding that he had an affective disorder. AR 358. Bauer also found that Bartz had: no restrictions on his activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Bauer could find no evidence of the "C" criteria recognized by the Social Security Regulations. AR 368-69. Finally, Bauer completed a mental residual functional capacity assessment, finding that Bartz was moderately limited in his ability to understand, remember and carry out detailed instructions. AR 372.

On October 15, 2007, Matt Bjerke, Ph.D., performed a consultative examination of Bartz for the state disability agency. Testing suggested that Bartz had deficiencies in concentration, memory and attention in the visual domain that were somewhat below what Bjerke would have expected given Bartz's verbal skills. Bjerke diagnosed Bartz with dysthymic disorder, history of ADHD, probable generalized anxiety disorder, schizotypal

5

personality traits[4] and social mistrust.  He gave Bartz a GAF of 58.  AR 309-10.  He opined that (1) Bartz's performance "might well be inconsistent on the job," particularly with recall and follow-through of instructions, and (2) Bartz "may well be prone to misinterpreting social situations."  AR 309.

On October 25, 2007, state agency psychologist Michael Mandli completed a psychiatric review technique form, finding that Bartz had organic mental disorders, an affective disorder, anxiety-related disorders and personality disorders.  AR 315.  Mandli found that he had moderate restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.  As had Bauer, Mandli also noted that there was no evidence of the "C" criteria.  AR 325-26.  In addition, Mandli completed a mental residual functional capacity assessment for Bartz, finding he was moderately limited in his ability to (1) complete a normal work day and work week without interruptions from psychologically based symptoms, (2) perform at a consistent pace without an unreasonable number and length of rest periods, (3) accept instructions and respond appropriately to criticism from supervisors, and (4) set realistic goals or make plans independently of others.  AR 312.  Even so, Mandli concluded that Bartz was "capable of work tasks [consistent with] his abilities and interests."  AR 313.

---

[4] Schizoid personality traits include lack of capacity for or a lack of interest in social relationships and a restricted range of emotional experience and expression.  Dorland's Illus. Medical Dictionary at 552 (32d ed.).

### D. Hearing Testimony

At the administrative hearing, Bartz testified that he had worked in the past as an insurance salesman and last worked at the beginning of 2005 as a real estate salesman. AR 55. Bartz stopped working because he was having trouble concentrating and focusing. AR 56. Bartz also testified that he experiences depression, including previous thoughts of suicide, but has stabilized by taking Cymbalta and Wellbutrin. Bartz sees a psychiatrist once a month and a therapist every two weeks. AR 56-57. Later in the hearing, Bartz emphasized that the Cymbalta he was taking was doing a "pretty good job actually" of controlling his symptoms, although he still has trouble sleeping at times. AR 58-60.

As to activities, Bartz testified that he did gardening, yard work and housework. Bartz also testified that he and his wife do not socialize with other couples, although Bartz got along fairly well with other people. AR 63. Bartz is able to use a computer and to read short stories, magazine articles and newspapers. In addition, Bartz is active at his church, serves on the board of directors at a nursing home, and does a volunteer farm news radio show from his home for twenty minutes each day. AR 62. Finally, he hunts and fishes occasionally. AR 59.

Bartz did testify that he could not work consistently on an assembly line because he would get distracted. AR 63-64. Bartz can also only sit for 20 minutes at a time. AR 64.

### E. Administrative Law Judge's Decision

In concluding that Bartz was not disabled, the administrative law judge performed the required five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this test,

the administrative law judge sequentially considers: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). If a claimant satisfies steps one through three, he is automatically found to be disabled. If the claimant meets steps one and two, but not three, then he must satisfy step four. *Id*. The claimant bears the burden of proof in steps one through four. If the claimant satisfies step four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work in the national economy. *Id.*

At step one, the administrative law judge found that Bartz had not engaged in substantial gainful activity since January 26, 2006, his alleged onset date, through March 31, 2008, his last insured date. At step two, he found that Bartz had severe impairments of attention deficit hyperactivity disorder, Dysthymia and Major Depressive Disorder, sleep apnea, and negativistic, depressive and avoidant personality traits. AR 18. In finding these impairments, the administrative law judge considered the report of the consultative examiner, Dr. Bjerke. He found that Bjerke's report supported his conclusion that Bartz had severe mental conditions. AR 19.

At step three, the administrative law judge found that Bartz did not have an impairment that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. AR 19. Specifically, after considering the medical evidence including Dr. Bjerke's report he found that Bartz's impairments singly or in combination did not meet or

8

medically equal listings 12.04, Affective Disorder or 12.08, Personality Disorder. He also concluded that Bartz's sleep apnea did not meet listing 12.02, Organic Mental Disorders. AR 20.

The administrative law judge found that Bartz retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to doing simple tasks. In determining his residual functional capacity, the administrative law judge assessed Bartz's credibility according to 20 C.F.R. 404.1529 and 416.929 and Social Security Rulings 96-4p and 96-7p. The administrative law judge considered Bartz's testimony that he was depressed and had a poor attention span. He found the testimony to be not entirely credible. He reached this conclusion based on Bartz's testimony concerning his activities, including doing housework, yard work and using the computer. In addition, the administrative law judge considered Bartz's social interactions, which included being active in his church and serving on the board of directors of a local nursing home. AR 22-23. He also concluded that while Bartz "seems credible," "the evidence longitudinally just does not reach the level which would prevent the claimant from doing simple routine work tasks." AR 23.

In arriving at a determination of Bartz's residual functional capacity, the administrative law judge concluded that the medical evidence showed Bartz's symptoms improved over time and that medication and therapy controlled his symptoms. AR 24. The administrative law judge rejected Dr. Weggel's September 24, 2008, functional assessment because it was not consistent with his progress notes going back to January 2005 that indicated Bartz was improving. In particular, the administrative law judge noted that

9

Weggel's office notes support the conclusion that Bartz was able to perform the requirements for unskilled work. AR 25.

At step four, the administrative law judge found that Bartz was unable to perform his past relevant work. At step five, the administrative law judge found that although Bartz was limited to doing simple work tasks, these limitations had little or no effect on the occupational base of unskilled work at all exertional levels. Using the Medical-Vocational Guidelines, therefore, the administrative law judge found that Bartz was not disabled.

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, *id.*, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

### B. Plaintiff's Arguments

Bartz argues that the administrative law judge erroneously rejected his treating physician's opinion that he could not maintain attention for two hour segments and failed to consider the favorable opinions of consulting physicians Dr. Bjerke and Dr. Mandli. The commissioner has established a regulatory framework that explains how an administrative law judge is to evaluate medical opinions, including opinions from state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, opinions from sources who have treated the plaintiff are entitled to more weight than non-treating sources, and opinions from sources who have examined the plaintiff are entitled to more weight than opinions from non-examining sources. 20 C.F.R. §§ 404.1527(d)(1) and (2), 416.927(d)(1) and (2). Other factors the administrative law judge should consider are the source's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6). The administrative

11

law judge "must explain in the decision" how much weight, if any, was given to the various medical opinions in the record. 20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii).

"[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. *Id.*; 20 C.F.R. § 404.1527(d)(2). When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. *Id*. These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist with respect to the allegedly disabling condition and how consistent the physician's opinion is with the evidence as a whole, as well as other factors. 20 C.F.R. § 404.1527(d)(2). The court of appeals reaffirmed this standard in *Scott v. Astrue*, 647 F.3d. 734, 740 (7th Cir. 2011).

An administrative law judge must also provide "good reasons" for the weight given a treating source opinion, *id*, and must base that decision on substantial evidence and not mere speculation. *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). The mere fact that a non-examining physician has a conflicting opinion is not sufficient *by itself* to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003).

In this case, the administrative law judge rejected Dr. Weggel's September 2008 opinion that Bartz could not maintain attention for two hours because he found it was not supported by Weggels' progress notes. In particular, he pointed out that Bartz reported to

12

Weggel in January 2005 that he had produced a professional brochure for realtors and was planning to coach a junior high wrestling team. Weggel also noted at that time that while Bartz had some problems with racing thoughts and concentration, he had the ability to follow through and had no observable memory deficits. The ALJ found that Bartz "had good control" with medication, as evidenced by Bartz's November 2005 statement to Weggel that antidepressants were helping. By December 2007 Weggel reported that Bartz was stable and was performing more physically active tasks, such as raising cattle and cutting firewood, because he "did poorly at bookwork activities." Finally, the ALJ found Weggel's opinion less persuasive because Weggel did not provide office notes from 2008 and it was unclear whether Weggel was even seeing Bartz at the time of the September 2008 assessment.

Although the ALJ's findings concerning Weggel's 2005 progress notes are supported by substantial evidence in the record, the ALJ erred in finding that (1) Bartz had good control with medication and (2) Weggel did not treat him in 2008. During Bartz's March 2006, September 2006 and December 2007 office visits, Weggel noted that Bartz continued to exhibit problems with moodiness, memory, attention and concentration despite "some improvement" from his medications. Contrary to the ALJ's findings, Bartz also saw Dr. Weggel on March 11 and July 14, 2008. Moreover, Weggel noted during the March visit that Bartz was stable, but still had ongoing problems with significant inattentiveness and distractability.

Curiously, even though the ALJ found Weggel's opinion unpersuasive, he noted in two different sections of his opinion that the evidence supported a finding that Bartz had memory problems and moderate difficulties in concentration, persistence or pace. AR 19, 21. In

13

support of these findings, he pointed to the "formal testing of Dr. Bjerke" and the fact that Bartz had greater attention, concentration and memory problems than Dr. Bjerke expected. AR 19. The ALJ did not discuss Dr. Bjerke's other findings, including Bjerke's opinion that Bartz's performance "might well be inconsistent on the job," particularly with recall and follow-through of instructions. The ALJ also failed to consider the opinion of Dr. Mandli, who found that Bartz was moderately limited in his ability to (1) complete a normal work day and work week without interruptions from psychologically-based symptoms, (2) perform at a consistent pace without an unreasonable number and length of rest periods, (3) accept instructions and respond appropriately to criticism from supervisors, and (4) set realistic goals or make plans independently of others.

Although moderate limitations do not necessarily prevent an individual from functioning satisfactorily and may not have convinced the ALJ that Bartz had greater limitations, the ALJ erred in failing to discuss Bjerke's and Mandli's assessments and the weight to be given them. The ALJ also should have explained why he did not account for Bartz's memory problems and moderate difficulties in concentration, persistence or pace in his residual functional capacity assessment.

As the court of appeals has explained, limiting a claimant to "simple" work tasks does not necessarily account for limitations of concentration, persistence or pace and, in particular, those caused by memory or cognitive impairments. *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). For example, in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), the state examiner and the ALJ concluded that the claimant had moderate limitations in concentration, persistence and pace because of her depression, but the ALJ asked the

vocational expert to consider only a "hypothetical worker [who] was restricted to routine, repetitive tasks with simple instructions." *Id.* at 617. The court of appeals rejected the Commissioner's argument that the limitation to routine and repetitive tasks "implicitly incorporated" the limitations for concentration, persistence and pace in part because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* at 620. As a result, the court remanded the case for additional proceedings. *See also Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) (limiting claimant to "simple, unskilled work" may not account for claimant's mental impairments). So, too, this case must be remanded because the administrative law judge failed to clearly incorporate all of Bartz's relevant impairments into his residual functional capacity analysis.

The ALJ's error is particularly troubling because he did not seek the assistance of on a vocational expert in determining whether employment opportunities remained available to Bartz in significant numbers. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) ("We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity, and vocational experts must consider deficiencies of concentration, persistence, and pace.") (internal quotations omitted). At the last step of the sequential evaluation process, the ALJ can satisfy the commissioner's burden by relying on one of the Medical-Vocational Guidelines found in 20 C.F.R., Subpart P, App. 2. *Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988). These rules take administrative notice of the numbers of <u>unskilled</u> jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy and very heavy), taking into

15

account the other vocational factors of age, education and work experience. 20 C.F.R., Subpart P, App. 2, § 200.00(b). Because the rules account only for limitations that affect the person's ability to meet the exertional requirements of jobs, they are dispositive only when the person's limitations are exertional in nature (*e.g.*, limitations on sitting, standing, amount of weight lifted). 20 C.F.R., Subpart P, App. 2, § 200.00(e). When a person has additional non-exertional limitations (such as limitations on the ability to balance, manipulate objects, hear, see, perform mental tasks or tolerate environmental conditions such as heat, cold, dust and fumes), the guidelines can be used only as a "framework for consideration" and the administrative law judge must cite other evidence for his conclusion that there are significant numbers of jobs that the claimant can perform. *Id*.

The commissioner's regulations recognize that in some cases, a person's non-exertional limitation may be so insignificant that it is obvious that it would not diminish the relevant job base and the relevant Medical-Vocational Guideline may still be applied. Soc. Sec. Ruling 83-14. In "more complex" cases, however, the administrative law judge may need the assistance of a vocational expert. *Id*. The Court of Appeals for the Seventh Circuit has said that a vocational expert is not required if there is "reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir. 1986). Although the ALJ may have been correct that Bartz's limitation to simple work tasks had little or no effect on the occupational base of unskilled work, which the regulations define as "work which needs little or no judgment to do simple duties that can be learned in the job in a short period of time," the ALJ failed to account for the fact that Bartz

had moderate limitations in concentration, persistence and pace. 20 C.F.R. § 404.1568(a); *see also see Jelinek*, 662 F.3d at 813–14. Because this case may be a more complex case requiring the expertise of a vocational expert, the ALJ's finding of no disability under the Medical-Vocational Guidelines must be reversed and reconsidered on remand in light of all of the relevant evidence.

ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is REVERSED and the case is REMANDED to the commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered this 9th day of December, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge